UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARLOWE MALONE,<br>Plaintiff,<br><br>vs.<br><br>NURSE PRACTITIONER<br>CONLEY, et al.,<br>Defendants. | Case No. 1:17-cv-413<br><br>Black, J.<br>Litkovitz, M.J.<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Plaintiff, a former inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, brings this action under 42 U.S.C. § 1983 against SOCF Nurse Practitioner Conley alleging a violation of his constitutional rights.[1] Plaintiff alleges that defendant Conley violated his Eighth Amendment rights by exhibiting deliberate indifference to his medical needs during a hunger strike, and Conley violated his First Amendment right to be free from retaliation by denying him medical attention until he stopped his hunger strike. This matter is before the Court on defendant's motion for summary judgment and supporting exhibits (Doc. 34) and plaintiff's memorandum in opposition (Doc. 42).

**A. FACTS**

**1. Defendant Conley's evidence**

Plaintiff suffers from several chronic diseases, such as diabetes, high blood pressure, and a history of seizures and deep vein thrombosis ("DVT"). (Doc. 34, Ex. A, *Conley Decl.*, ¶ 4). As a result, he is continuously monitored and treated by Ohio Department of Rehabilitation and Correction ("ODRC") medical staff in order to prevent the deterioration of his health. (*Id.*; Ex. F, *Chronic Disease Management Policy*). Because of this, plaintiff was scheduled to be seen at

---

[1] Defendant Conley is the sole remaining defendant in this case. *See* Doc. 24.

least monthly by medical personnel at SOCF to ensure his treatment plans were up to date, and his blood sugar was to be checked daily. (*Id.*, Ex. A, *Conley Decl.*, ¶ 5). Defendant Conley encourages all chronic care inmates to remain compliant with their treatment recommendations. *Id.*

Nonetheless, an inmate may refuse medical treatment. (*Id.*, ¶ 6). On July 11, 2016, plaintiff refused to go to his monthly chronic care appointment with defendant Conley for evaluation of the status of his chronic conditions. (*Id.*, ¶ 8; Ex. B, *Medical Records*, p. 35; Ex. D, *Refusals*, p. 17). Plaintiff was told that his refusal to come to the infirmary to have his chronic conditions treated came with risks, and he was educated on the importance of complying with his medications. (*Id.*, ¶ 9; Ex. D, *Refusals*, p. 17).

Plaintiff claims that he started a hunger strike on July 15, 2016, in response to a guilty finding at a rules infraction board hearing. (Doc. 3, PageID 17). When an inmate is on a hunger strike, the medical staff provides the inmate with necessary medical services, and the inmate is counseled on the possible consequences of continued fasting. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 12; Ex. G, *Hunger Strike Policy*). A nurse assesses the inmate's vital signs daily. *Id.* Plaintiff states that on July 18, 2016, three days after commencing his hunger strike, he "started experiencing symtoms (sic) of his chronic conditions pulmonary embolism and dietbetes (sic) shortness of breath, light-headedness, fainting, possibly seizures." *Id.* Notably, plaintiff refused his insulin on July 17 and 18, 2016. (Doc. 34, Ex. D, *Refusals*, pp. 15-16).

On July 19, 2016, defendant Conley sent a nurse to plaintiff's cell to check if he wanted to be seen due to his hunger strike. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 13; Ex. B, *Medical Records*, p. 33; Ex. D, *Refusals*, p. 14). Plaintiff refused. *Id.* Plaintiff did not appear to be in distress and indicated that he understood the ill effects associated with not eating. *Id.*

2

Plaintiff waited until July 24, 2016, six days after the symptoms allegedly started, to turn in a health service request ("HSR") slip. (Doc. 3, PageID 17). Plaintiff's HSR states, "I had a stroke in 2001 and I think that I have 6 minny (sic) strokes I also think my body is warning me that another stroke is coming." (Doc. 34, Ex. B at 1).

In the intervening time period, plaintiff refused to have his vitals taken on July 19 and 21 and refused to have his blood sugar checked as part of his diabetes treatment on July 21, 22, 23 and 24. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 7; Ex. C, *Diabetic Record*, p. 8; Ex. D, *Refusals*, pp. 13-14). This HSR was received by the nursing staff at SOCF, not by defendant Conley. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 14; Ex. E, *HSR*; Ex. B, *Medical Records*, p. 32).

On July 26, 2016, defendant Conley treated plaintiff for his hunger strike. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 15; Ex. B, *Medical Records*, pp. 28-30; Doc. 3, PageID 17). Plaintiff claims that after he informed defendant of his symptoms, defendant Conley "told plaintiff that he would not do nothing [sic] for plaintiff until he came off of his hunger strike." (Doc. 3, PageID 17).

However, plaintiff's medical records show that during the July 26, 2016 visit, plaintiff's vital signs were checked by a nurse, and defendant Conley did a general exam. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 15; Ex. B, *Medical Records*, pp. 28-30). Defendant Conley ordered that a comprehensive metabolic panel be conducted on August 8, 2016. *Id.* Defendant Conley did not order that any labs be conducted on that date because plaintiff was not exhibiting any symptoms and he was not due for his monthly labs to monitor his chronic conditions, which were to occur on August 8, 2016. *Id.*

At no time during plaintiff's visit with defendant Conley did he mention that he thought his body was warning him that another stroke was coming. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 16). Plaintiff was informed of the dangers of his continued hunger strike, and he did not voice any concerns. *Id.*

3

On July 27, 2016, plaintiff ended his hunger strike. (Doc. 34, Ex. K, *Incident Report*). On July 29, 2016, plaintiff commenced a second hunger strike. (Doc. 34, Ex. L, *Hunger Strike Memo*; Ex. B, *Medical Records*, p. 23).

On August 1, 2016, plaintiff passed out in his cell and was brought to the infirmary for an assessment by a nurse. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 19; Ex. B, *Medical Records*, p. 26). Plaintiff's blood glucose levels were low, so he was given glucose tablets. *Id.* Plaintiff indicated that he understood the importance of maintaining a healthy diet and taking his insulin. *Id.*

On August 2, 2016, defendant Conley saw plaintiff for his hunger strike, and plaintiff stated that he was doing well and denied any concerns. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 20; Ex. B, *Medical Records*, pp. 23-24). Plaintiff refused to have his blood sugar checked on August 4, 5, 6, 7, 8 and 9, 2016. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 7; Ex. C, *Diabetic Record*, p. 3; Ex. D, *Refusals*, pp. 1-6). Plaintiff refused to have his daily nursing assessment and his vitals checked on August 6 and 7, 2016. (Doc. 34, Ex. D, *Refusals*, pp. 2-5).

On August 8, 2016, plaintiff was seen by defendant Conley both due to his hunger strike and for his chronic care clinic visit. (Doc. 34, Ex. B, *Medical Records*, pp. 13-18). Labs were done, and plaintiff denied suffering from any issues or complications since his last visit. *Id.* Though plaintiff had been compliant with the treatment for some of his chronic conditions, he was not in compliance with his anticoagulation therapy or with his insulin due to the hunger strike. *Id.* Plaintiff indicated he understood the potential poor outcomes of a continued hunger strike. *Id.* On August 9, 2016, plaintiff ended his second hunger strike. (Doc. 34, Ex. B, *Medical Records*, pp. 11-12).

The morning of August 10, 2016, defendant Conley received the results of plaintiff's labs. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 25). Plaintiff's PT (prothrombin time) levels were monitored to determine whether his blood was clotting appropriately as part of his

4

anticoagulation therapy. *Id.* Plaintiff's PT level was extremely high, so defendant Conley ordered that additional labs be conducted immediately. *Id.* Defendant Conley also ordered that plaintiff's Warfarin be held for three days in an attempt to stabilize his PT levels. (*Id.*; Ex. B, *Medical Records*, p. 9). Plaintiff was placed on infirmary observation until his labs came back so that he would be observed 24 hours a day. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 27; Ex. B, *Medical Records*, p. 7).

Late in the afternoon of August 10, 2016, plaintiff was transported to The Ohio State University Hospital immediately after defendant Conley received the results of plaintiff's labs. (Doc. 34, Ex. A, *Conley Decl.*, ¶ 28). Plaintiff's labs showed extremely low hemoglobin levels, which combined with the high PT level meant that plaintiff could potentially be suffering from internal bleeding. *Id.* While hospitalized, plaintiff received a blood transfusion. (*Id.*; Ex. B, *Medical Records*, pp. 1-5; Doc. 3, PageID 18).

### 2. Plaintiff's evidence

Plaintiff presents a declaration that states the following, in relevant part:

4. That I am a chronic care inmate who suffers from several chronic diseases which includes diabetes, high blood pressure, and a history of deep vein thrombosis ("DVT") which requires continuous monitoring and treatment in order to prevent deterioration of my health. That I never refused treatment on July 19th and July 21, 2016.

5. That I never refused treatment to have my blood sugar checked on July 22, 23, 24, 29, August 4, 5, 6, 7, 8, 9, 2016.

6. That I never refused my monthly scheduled appointment with Defendant Conley on July 11th, 2016 to have my chronic conditions treated, and that I never stated I was not having any issues with my health. That I never refused my insulin on July 17th, 2016 and July 18th, 2016.

7. That on July 15th, 2016 I commenced a hunger strike to protest an arbitrary guilty finding by the RIB (rules infraction board) for a rule violation which was unsupported by any evidence.

8. That on July 18th, 2016 I started experiencing symptoms of my chronic

5

pulmonary embolism and diabetes, shortness of breath, light-headedness, fainting, possibly seizures, and that this was brought to the attention of John/Jane Doe nurse during med rounds. That on July 19th 2016 I never refused treatment due to my hunger strike.

9. That on July 24th, 2016 I submitted a health service request complaining of my symptoms.

10. That on July 26th, 2016 I was examined by Nurse Hill and explained my concerns about my symptoms.

11. That on July 26th, 2016 I was examined by Defendant Conley and informed him about my symptoms; shortness of breath, light-headedness, fainting, possibly seizures, connected to my pulmonary embolism, diabetes, at which time nurse practitioner Conley informed me that he would do nothing for me until I ended my hunger strike.

12. That on July 31, 2016 during pill call at night, I was (sic) lost consciousness and was found on the floor in my cell. Nurse Jane Doe administered a finger stick one hour later and informed me that my sugar levels were extremely low and thirty minutes later I was rushed to the infirmary for a physical exam. That my medical readings were recorded on the computer.

13. That on August 8th, 2016 a medical examination report was completed on me due to my stumbling while being escorted from the shower. Nurse John/Jane doe documented false information in my medical examination report by stating that my response was "I'm good, I don't have any injuries", and the findings were I was alert and oriented, respirations even and unlabored, no acute distress observed, no injuries observed, full observation not completed, denied need for full assessment and did not come to cell front.

14. On August 9th, 2016 I ended my hunger strike which was initiated on July 15th, 2016 after Defendant Conley took my blood which showed obvious deficiencies.

15. That on August 10th, 2016 my blood was again taken by Defendant Conley and due to continued deficiencies I was taken by Medical Emergency and admitted to Ohio State University Hospital and later administered two (2) blood transfusions upon arrival to OSU, and that my blood pressure had dropped to abnormal levels of 86/60 at 10:34:35 AM until 4:56:17 PM the same day.

(Doc. 42).

## B. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When a defendant has identified the shortfall in a plaintiff's case, the plaintiff must come forward with evidence establishing a material issue of fact for resolution by the fact-finder. *Anderson*, 477 U.S. at 252. The Court is not obligated to "comb through the record to ascertain whether a genuine issue of material fact exists." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407, 410 (6th Cir. 1992)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## C. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

### 1. Deliberate Indifference Claim

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, plaintiff must show that defendant Conley was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). In addition, "when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of

8

circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Thus, to prove the subjective component, plaintiff must show that defendant Conley: (a) subjectively knew of a risk to his health; (b) drew the inference that a substantial risk of harm to him existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837-38. The Sixth Circuit distinguishes between Eighth Amendment claims alleging a complete denial of medical care and those contesting the adequacy of medical care actually received. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Courts are generally reluctant to second guess the medical judgments of medical professionals, and a prisoner who has received treatment for his medical condition must show that the treatment was "so woefully inadequate as to amount to no treatment at all." *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

### a. Plaintiff fails to establish a genuine issue of fact on the objective component of his Eighth Amendment claim.

It is undisputed that plaintiff suffers from several chronic diseases, such as diabetes, high blood pressure, and a history of seizures and deep vein thrombosis; he is to be continuously monitored by prison medical staff in order to prevent the deterioration of his health; he was scheduled to be seen at least monthly by medical personnel at SOCF to ensure his treatment plans were up to date; and his blood sugar was to be checked daily. There is also no dispute that plaintiff started a hunger strike on July 15, 2016. Plaintiff alleges that defendant Conley "failed to provide Plaintiff with continuous and comprehensive medical care during his hunger strike in July and August, 2016." (Doc. 42 at 2). He argues that "his chronic conditions were not adequately treated during his hunger strike, and that there was a detrimental effect from an alleged refusal of medical treatment." (*Id.* at 9). He alleges he never refused treatment, finger sticks, or examination by any nursing staff. (*Id.*).

9

Because plaintiff is an inmate who has received on-going treatment for his various medical conditions and claims that this treatment was inadequate, "plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment." *Rhinehart*, 894 F.3d at 737. To establish the objective component of his Eighth Amendment claim, plaintiff must present "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Id.* (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (internal quotation marks omitted)).

> This will often require "expert medical testimony . . . showing the medical necessity for" the desired treatment and "the inadequacy of the treatments" the inmate received. *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017); *see Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (explaining that adequacy-of-care claims may require expert testimony "to create a genuine dispute that the prisoner's medical needs are serious"). The plaintiff also must "place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment. *Blackmore* [*v. Kalamazoo Cty.*], 390 F.3d [890,] 898 [(6th Cir. 2004)] (quoting *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)); *cf. Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (holding that defendant had "met this requirement" at the motion-to-dismiss stage "by alleging statements by [doctors] linking the delay in treatment to the permanency of his vision impairment").

*Rhinehart*, 894 F.3d at 737-38.

Plaintiff appears to argue that there are issues of fact as to whether he refused to have his blood sugar checked on numerous dates, refused treatment on July 19 and July 21, 2016, and refused his insulin on July 17 and 18, 2016. Plaintiff alleges he did not refuse treatment on these dates, while defendant Conley and the medical records indicate otherwise. Even assuming plaintiff's version of the facts as true, plaintiff has failed to "place verifying *medical* evidence in the record to establish the detrimental effect of the inadequate treatment." *Id.* at 738 (emphasis added). In other words, plaintiff has failed to present verifying medical evidence showing that the failure to check his blood sugar on particular dates, the lack of treatment on July 19 and 21,

the lack of insulin on July 17 and 18 led to his emergency hospitalization and blood transfusion and that the cause was not the adverse health effects of his self-imposed hunger strike, which can include irreversible organ damage and possible death. (Doc. 34-1, Conley Aff., ¶¶ 13,16). There is no verifying *medical* evidence establishing the necessary causation between the alleged lack of treatment on certain days and plaintiff's subsequent hospitalization. The only evidence in this regard is plaintiff's conclusory statement in his affidavit, which assumes the "deficiencies" by SOCF staff led to his hospitalization and does not constitute competent medical evidence. (Doc. 42 at 16, ¶ 15). Plaintiff does not dispute the evidence showing he was monitored during his hunger strike and he received treatment and insulin on dates during the hunger strike other than those he has specified.

Plaintiff has failed to present verifying medical evidence disputing the adequacy of his medical treatment during his hunger strike. Therefore, plaintiff has not established a genuine issue of fact on the objective component of his Eighth Amendment claim. *See King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014) ("[Plaintiff's] failure to provide medical expert testimony to establish a causal link between her injury and the allegedly inadequate treatment thus dooms her deliberate-indifference claim.").

### b. Plaintiff fails to establish a genuine issue of fact on the subjective component of his Eighth Amendment claim.

Plaintiff denies that he refused to have his blood sugar checked on numerous dates, refused treatment on July 19 and July 21, 2016, or refused his insulin on July 17 and 18, 2016. Assuming as true for purposes of this motion plaintiff's allegations that he did not refuse treatment or medication on these dates, there is no dispute that plaintiff did not submit a request for health care services until July 24, 2016, and that request was received by Nurse Hill (not defendant Conley) on July 25. He does not dispute that he was seen by both Nurse Hill and

11

defendant Conley the following day, July 26, 2016. While plaintiff alleges that Conley told him on July 26 that "he would do nothing for me until I ended my hunger strike" (Doc. 42 at 16, ¶ 11), plaintiff does not dispute that Conley performed a physical examination and ordered a comprehensive metabolic panel to be performed on August 8, 2016. There is no dispute that when plaintiff lost consciousness on August 1, 2016, the prison nurse tested his sugar levels, transferred plaintiff to the infirmary for a physical exam and treatment, and gave plaintiff glucose tablets to treat his low blood sugars. Plaintiff does not dispute that defendant Conley saw plaintiff for his hunger strike the following day, August 2, 2016, and that plaintiff stated he was doing well and denied any concerns. Plaintiff does not dispute that he was examined by a prison nurse after he stumbled while being escorted from the shower on August 8, 2016, although he alleges that the nurse's progress note reflecting that plaintiff reported he was "good" and did not need a full assessment are "false."[2] Plaintiff does not dispute that earlier that day, he was examined by defendant Conley both due to his hunger strike and for his chronic care clinic visit; labs were performed; and plaintiff denied suffering from any issues or complications since his last visit. Plaintiff does not dispute that when Conley received plaintiff's lab results and discovered an extremely high PT level on the morning of August 10, 2016, Conley immediately ordered that additional labs be performed, that plaintiff's Warfarin be held for three days in an attempt to stabilize his PT levels, and that plaintiff be placed on infirmary observation where he would be observed 24 hours a day until his labs came back. Plaintiff was transported to The Ohio State University Hospital later that afternoon immediately after defendant Conley received the new lab results, which showed extremely low hemoglobin levels that when combined with

---

[2] Plaintiff has not presented any evidence that the SOCF nurse who examined him on August 8, 2016 falsified his progress note on that date. Plaintiff's allegation to the contrary is speculative and therefore "does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). In any event, the only defendant in this case is defendant Conley and not any other SOCF nurse.

12

the high PT level, indicated plaintiff could potentially have internal bleeding. Plaintiff received one or two blood transfusions while at the hospital.[3]

The undisputed evidence of record establishes that defendant Conley is entitled to summary judgment as plaintiff fails to satisfy the subjective component of his Eighth Amendment deliberate indifference claim. Plaintiff has not presented evidence creating a genuine issue of fact that defendant Conley consciously disregarded any risk to plaintiff's health posed by his medical conditions as they existed during the period of his hunger strike. *Farmer*, 511 U.S. at 839, 844; *Loggins v. Franklin Cty., Ohio*, 218 F. App'x 466, 472 (6th Cir. 2007). The evidence proffered by defendant overwhelmingly demonstrates that plaintiff received medical treatment from defendant Conley and other SOCF health care staff throughout his hunger strike. Plaintiff has failed to "present enough evidence from which a jury could conclude that [the] defendant 'so recklessly ignored the risk that he was deliberately indifferent to it.'" *Rhinehart*, 894 F.3d at 738 (quoting *Cairelli v. Vakilian*, 80 F. App'x 979, 983 (6th Cir. 2003)). "[T]here is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have '*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm.'" *Id.* at 738-39 (emphasis in the original) (quoting *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018)). Plaintiff has failed to meet this high threshold and to present evidence which creates a genuine issue of fact for trial that defendant Conley consciously disregarded plaintiff's medical conditions during plaintiff's hunger strike.

No reasonable jury could find that plaintiff's treatment by defendant Conley during his hunger strike amounted to "no treatment at all." *Rhinehart*, 894 F.3d at 739. "To go on to trial, [plaintiff] must show that there is a genuine issue of fact over the adequacy of the care [he]

---

[3] Defendant alleges plaintiff received one transfusion; plaintiff alleges he received two transfusions.

received and that he suffered a verified medical injury because of the inadequate treatment." *Id.* Because plaintiff has failed to establish a genuine issue of fact on the objective and subjective components of his Eighth Amendment claim, summary judgment should be granted to defendant Conley on plaintiff's denial of medical care claim.

**2. Retaliation claim.**

A prisoner seeking to establish a First Amendment retaliation claim must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action that was capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Inmates retain First Amendment rights that are not "inconsistent with [their] status[es] [as] prisoner[s] or with the legitimate penological objectives of the corrections system." *Smith v. Campbell,* 250 F.3d 1032, 1036 (6th Cir. 2001) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). As such, inmate speech is unprotected by the First Amendment when "made in a manner incompatible with the institution's legitimate penological objectives." *Griffin v. Berghuis,* 563 F. App'x 411, 416 (6th Cir. 2014).

Plaintiff alleges that defendant Conley retaliated against him for engaging in a hunger strike by denying him medical care. As explained above, there is no genuine factual dispute as to whether defendant Conley was deliberately indifferent to plaintiff's medical needs during his hunger strike. Therefore, plaintiff fails to establish the second and third prongs of his retaliation claim. Summary judgment should be granted for defendant Conley on this claim.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion for summary judgment be granted.

2. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of the Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 1/27/20

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARLOWE MALONE,
Plaintiff,

vs.

NURSE PRACTITIONER
CONLEY, et al.,
Defendants.

Case No. 1:17-cv-413

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).